UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MATEK INCORPORATED, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   23-01847 (RC) |
| | : | |
| v. | : | Re Document No.:   8 |
| | : | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | : : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

GRANTING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Matek Incorporated ("Matek") sued International Business Machines Corporation, more commonly known as IBM, in the District of Columbia Superior Court for breach of contract. *See* Notice of Removal at 1, ECF No. 1; Compl. at ¶¶ 1, 19–28, ECF No. 1-2. IBM removed the case to this Court from D.C. Superior Court and subsequently filed a motion to dismiss Matek's case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Notice of Removal; Mem. Supp. Def.'s Mot. to Dismiss ("Mot.") at 6, ECF No. 8-1. Before the Court are IBM's Motion to Dismiss, Matek's response in opposition to IBM's motion ("Opp."), ECF No. 11, and IBM's reply in support of its motion ("Reply"), ECF No. 12. For the reasons explained below, the Court grants IBM's motion to dismiss because Matek has failed to state a claim upon which relief can be granted.

## II. BACKGROUND

The story of this case involves three entities: Matek, IBM, and Howard University ("Howard" or "the University"). *See* Compl. at ¶¶ 6–8; Statement of Work at 1, ECF No. 1-2.

Matek is a small Maryland corporation that provides telecommunication and information technology services in the Washington, D.C. metropolitan area. *See* Compl. at ¶¶ 6–8; Opp. at 1. IBM is a multinational technology corporation that specializes in an array of technology products and services. *See* Compl. at ¶¶ 6–8. Howard University is a prestigious university located in the District of Columbia. *See* Opp. at 1.

In 2017, IBM began to negotiate a contract with Howard University to provide the University with telecommunication services. *See* Compl. at ¶ 7. To furnish Howard's telecommunication requirements, IBM sought subcontractors to assist with the Howard University project. *Id.* at ¶ 6. One of those subcontractors was Matek. *Id.* at ¶ 6. Matek and IBM entered into a "Supplier Relationship Agreement" whereby Matek agreed to provide certain telecommunication services to IBM's customer, here the University. *Id.* at ¶ 8; Opp. at 2. After IBM and Matek entered into the Supplier Relationship Agreement, they executed another document called the "Statement of Work," which incorporated the terms and conditions of the Supplier Relationship Agreement and explained the scope of Matek's work on the Howard University project. *See* Compl. at ¶¶ 8, 13; Statement of Work at 1. Generally speaking, the Statement of Work governed the relationship between Matek and Howard, *see* Statement of Work at 1, 2, 23 ("This Agreement is entered solely between and may be enforced only by Customer [Howard] and Supplier [Matek]."), whereas the Supplier Relationship Agreement primarily governed the relationship between Matek and IBM, *see* Supplier Relationship Agreement at 1, ECF No. 1-2.[1]

---

[1] The Court refers to the combined Statement of Work and Supplier Relationship Agreement as "the Agreement."

As the astute reader may have surmised, the relationship between Matek and IBM soured. IBM terminated the Agreement without cause and refused to pay Matek for further services. *See* Compl. at ¶ 17. As a result, Matek brought this suit against IBM for breach of contract. *See generally* Compl. IBM now moves to dismiss. *See generally* Mot.

### III.  LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's factual allegations, therefore, "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). A court need not accept a plaintiff's legal conclusions as true, *see Iqbal*, 556 U.S. at 678, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555. "In determining whether a complaint fails to state a claim, the court may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the court] may take judicial notice." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49 (D.D.C. 2021) (cleaned up); *English v. D.C.*, 717 F.3d 968, 971 (D.C. Cir. 2013) (explaining that the Court "may consider attachments

to the complaint as well as the allegations contained in the complaint itself" when deciding a motion to dismiss).

## IV.  ANALYSIS

The single count in Matek's complaint alleges breach of contract.  *See* Compl. at ¶ 19–28.[2]  "To survive a motion to dismiss a breach of contract claim under New York law, the Complaint must allege facts which show 'the existence of a contract, the plaintiff's performance pursuant to that contract, the defendants' breach of their obligations pursuant to the contract, and damages resulting from that breach[.]'"  *Heidi Aviation, LLC v. Jetcraft Corp.*, 573 F. Supp. 3d 182, 193 (D.D.C. 2021) (quoting *Elisa Dreier Reporting Corp. v. Glob. Naps Networks, Inc.*, 921 N.Y.S.2d 329, 333 (N.Y. App. Div. 2011)).  Contract interpretation is "generally [a] matter[ ] of law and therefore [is] suitable for disposition on a motion to dismiss."  *PB Ams. Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 247 (S.D.N.Y. 2010) (quoting *Citadel Equity Fund, Ltd. v. Aquila, Inc.*, 371 F. Supp. 2d 510, 516 (S.D.N.Y. 2005)); *see also Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998) ("Under New York law the initial interpretation of a contract is a matter of law for the court to decide[.]" (internal quotation marks and citation omitted)).  When a contract's language is "clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss."  *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010).

---

[2] The parties agree that their contract is governed by New York law.  *See* Mot. at 4; Opp. at 7; Reply at 3; *see also* Supplier Relationship Agreement at 2, ("Except as otherwise set forth in SOW or in Participation Attachment, if any, the parties agree to: i) the application of the laws of the State of New York for all Agreements executed by International Business Machines Corporation.").

4

### A. Termination Without Cause

Matek alleges that IBM breached their contract by "terminating the [parties'] Agreement without cause and before Deliverables and Services were completed on the Howard Project, and failing to pay Plaintiff in violation of the terms of the Agreement." Compl. at ¶ 26; *see also* Opp. at 7. IBM asserts that Matek's complaint fails to state a claim because the Agreement between IBM and Matek clearly and unambiguously authorized IBM to terminate the Agreement with Matek without cause. *See* Mot. at 6; Reply at 1. Therefore, IBM says, Matek has not and cannot allege a breach of contract claim. *See* Mot. at 6.

Under New York law, "[i]t is well settled that a contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, 'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *MHR Cap. Partners LP v. Presstek*, Inc., 912 N.E.2d 43, 47 (N.Y. 2009) (quoting *Greenfield v. Philles Records*, 780 N.E.2d 166, 170 (N.Y. 2002)). Moreover, New York courts enforce only the contractual terms bargained for and assented to by the parties and courts "may not by construction add or excise terms, nor distort the meaning of those used and thereby 'make a new contract for the parties under the guise of interpreting the writing.'" *Reiss v. Fin. Performance Corp.*, 764 N.E.2d 958, 961 (N.Y. 2001) (quoting *Schmidt v. Magnetic Head Corp.*, 468 N.Y.S.2d 649, 654 (N.Y. App. Div. 1983)). Accordingly, the Court examines the plain meaning of the text within the four corners of the parties' Agreement to determine whether IBM's without-cause termination breached the Agreement.

As explained above, two related documents comprise the relevant Agreement[3] in this case: (1) the "Supplier Relationship Agreement" and (2) the "Statement of Work."  *See* Compl. at ¶ 8.  Both the Supplier Relationship Agreement and the Statement of Work contain provisions governing the circumstances under which the Agreement may be terminated.  IBM argues that the Supplier Relationship Agreement explicitly and unambiguously authorized it to terminate the Agreement with Matek without cause.  *See* Mot. at 2.  That assertion is accurate: the Supplier Relationship Agreement states that "IBM may, upon written notice to Supplier, terminate a [Statement of Work] . . . ii) without cause, in each case with termination effective on the date set forth in the notice."  Supplier Relationship Agreement at 2.  And the Supplier Relationship Agreement further authorized IBM to terminate the Supplier Relationship Agreement itself without cause if there was no Statement of Work in place.  *Id.*  Thus, the plain unambiguous terms of the Agreement permitted IBM to terminate the Agreement—both the Statement of Work and the Supplier Relationship Agreement—without cause.  S*ee Elsaeidy v. Guarino*, 767 N.Y.S.2d 889, 890 (N.Y. App. Div. 2003) ("Since the unconditional cancellation clause permitted the defendants to cancel the contract for any reason, the cancellation was authorized by the parties' contract and did not constitute an actionable breach.").

Nevertheless, Matek argues that granting IBM's motion to dismiss would be inappropriate because the language of the Agreement is ambiguous with respect to the termination provision given an alleged inconsistency between the Supplier Relationship

---

[3] "Under New York law . . . documents must be read together, even though they were executed on different dates and were not all between the same parties, if the documents formed part of a single transaction and were designed to effectuate the same purpose." *Bank of New York v. F.D.I.C.*, 453 F. Supp. 2d 82, 99 (D.D.C. 2006), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007) (cleaned up).  Here, the Statement of Work explicitly incorporates the Supplier Relationship Agreement.

Agreement and the Statement of Work. *See* Opp. at 6–7 (conceding that IBM's arguments "might be valid but for the fact that the SOW and the SRA are fraught and replete with inconsistencies, conflicts and discrepancies."). Specifically, Matek argues that the Statement of Work prohibited IBM from terminating it without cause. The Court disagrees.

In support of its contention, Matek directs the Court's attention to the termination provision of the Statement of Work. *See* Opp. at 7. But the termination clause in the Statement of Work does not avail Matek. *See Elletson v. Bonded Insulation Co. Inc.*, 708 N.Y.S.2d 511, 513 (N.Y. App. Div. 2000) ("[A]mbiguity [does not] exist where one party's view strains the contract language beyond its reasonable and ordinary meaning." (cleaned up)). First off, by its own terms, the termination clause in the Statement of Work restricts the circumstances under which Howard—not IBM—could terminate the Agreement with Matek. The Statement of Work's termination clause is titled "Termination *by Howard*." *See* Statement of Work at 24 (emphasis added). The heading of a provision provides helpful clues to the meaning of that provision, *see Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 727 (D.C. Cir. 2022) ("The title and headings are permissible indicators of meaning." (internal quotation marks and citation omitted)), and here the heading cues the reader that only Howard—not IBM—was restricted by the provision. Additionally, the substantive text of the provision states that "*Howard may* terminate this Agreement . . . ." *See* Statement of Work at 24 (emphasis added). Accordingly, the plain meaning interpretation of the text of the termination clause in the Statement of Work is that the termination clause restricts only the way that Howard may terminate the Agreement with Matek. By contrast, the part of the Agreement relevant to understanding the circumstances under which IBM may terminate the Agreement is found in the Supplier Relationship Agreement. *See* Supplier Relationship Agreement at 2.

Moreover, the alleged inconsistency between the Supplier Relationship Agreement and Statement of Work is illusory when the Agreement is read in its entirety—as the Agreement must be interpreted. *See W. W. W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990); *see also Gary Friedrich Enter., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013) (explaining that, when interpreting a contract under New York law, courts must "not consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole"); *Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*, 760 F.2d 390, 395–96 (2d Cir. 1985) (explaining "basic tenet of contract law" that "where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect"). This is so because the Statement of Work "adopts and incorporates by reference the terms and conditions of [the] Supplier Relationship Agreement." *See* Compl. at ¶ 20; Statement of Work at 1. And, as explained above, the Supplier Relationship Agreement explicitly permits IBM to terminate the Agreement with Matek "without cause." *See* Supplier Relationship Agreement at 2. It is not inconsistent or ambiguous for two distinct entities governed by the same contract to be authorized to terminate the Agreement under different circumstances. *C.f. Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 862 (D.C. Cir. 2015) (explaining that a subcontract does "not [necessarily] incorporate the prime contract's dispute clause" (cleaned up)). And indeed, the Statement of Work more broadly governs only the relationship between Howard and Matek and does not affect IBM's rights under the Supplier Relationship Agreement. *See* Statement of Work at 1, 2, 15, 23 ("This Agreement is entered solely between and may be enforced only by Customer [Howard] and Supplier [Matek]."). Because there is no ambiguity with respect to the Agreement—and the Agreement explicitly provides that IBM may terminate the Agreement with Matek without cause—the Court

concludes that Matek has failed to state a claim for breach of contract.  Accordingly, the Court grants IBM's motion to dismiss for failure to state a claim.

### B.  Two-Year Limitations Period

Even, assuming arguendo, that there were some ambiguity concerning whether IBM was entitled to terminate the Agreement without cause, the Court also concludes that Matek's claim is barred by a contractual two-year limitations period.  *See* Supplier Relationship Agreement at 2–3 ("Neither party will bring a legal action arising out of or related to this Agreement more than two years after the cause of action arose."); Mot. at 9; Reply at 5.  Matek states that IBM breached "in April of 2020," Compl. at ¶ 15; Opp. at 4, but Matek brought this suit in March of 2023, *see generally* Compl. at ¶ 15—more than two years after the cause of action arose.  Accordingly, Matek's claim is time-barred by the Agreement.

Matek argues that the two-year limitations period provision in the Supplier Relationship Agreement is inconsistent with the Statement of Work and therefore that the limitations period should not be applied because it is ambiguous.  *See* Opp. at 6 ("[IBM's] claims might be valid but for the fact that the SOW and the SRA are fraught and replete with inconsistencies, conflicts and discrepancies.").  The inconsistency arises, Matek says, because the Statement of Work states that Matek "may pursue any and all remedies . . . available at Law and in equity" and, under New York law, a claimant has six years to pursue a contract claim.  *See* Opp. at 7; Statement of Work at 23.

But there is no inconsistency here.  Under New York law "[t]he parties to a contract may agree to limit the period of time within which an action must be commenced to a period shorter than that provided by the applicable statute of limitations." *John v. State Farm Mut. Auto. Ins. Co.*, 983 N.Y.S.2d 883, 884 (N.Y. App. Div. 2014) (citation omitted); *Krohn v. Felix Indus.,*

9

*Inc.*, 641 N.Y.S.2d 77, 78 (N.Y. App. Div. 1996) ("It is well settled that parties to a contract may agree to limit the period in which an action must be commenced to a shorter time than that otherwise provided by the applicable Statute of Limitations."). "Where the party against whom an abbreviated Statute of Limitations is sought to be enforced has demonstrated no duress, fraud or misrepresentation in regard to his agreement to the shortened period, it must be assumed that the term was voluntarily agreed to." *Felix Indus.*, 641 N.Y.S.2d at 78 (citations omitted). Here, the parties explicitly agreed to a shorter limitations period in the Supplier Relationship Agreement. *See* Supplier Relationship Agreement at 2 ("Neither party will bring a legal action arising out of or related to this Agreement more than two years after the cause of action arose."); *see also Nerey v. Greenpoint Mortg. Funding, Inc.*, 40 N.Y.S.3d 510, 513 (N.Y. App. Div. 2016) ("A party who executes a contract is presumed to know its contents and to assent to them.").

Matek argues that it had "no opportunity to review either the SRA or the SOW" and that IBM required Matek to review and execute the Statement of Work within three days. Opp. at 2. While "duress" may undermine a contractual limitations period, Matek does not demonstrate duress and its argument is unpersuasive. In its opposition brief, Matek argues that it had no opportunity to review the Agreement but it does not state that it was coerced into signing the Agreement.[4] *See Barker v. Conley*, 195 N.E. 677, 679 (N.Y. 1935) (Where "[n]o duress [is]

---

[4] This argument appears only in Matek's brief in opposition to IBM's motion to dismiss and does not appear on the face of the complaint. *See BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 34 (D.D.C. 2015) ("[T]he Court cannot consider facts alleged in the briefing when ruling on a Motion to Dismiss. It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks and citation omitted)). Rather, the complaint states that "Prior to June 27, 2017 [the date on which the Supplier Relationship Agreement was signed], IBM and Matek *met regularly* to plan on how best to service the Univ[]er[s]ity's contractual needs." Compl. ¶¶ 7, 8 (emphasis added). Presumably, during these regular meetings, Matek could have reviewed or discussed IBM's contract terms. "A party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms." *Shklovskiy v. Khan*, 709 N.Y.S.2d 208, 209 (N.Y. App. Div. 2000).

shown . . . the plaintiff's ignorance of what he was signing is immaterial unless he was deceived in doing so."); *Foundry Cap. Sarl v. Int'l Value Advisers, LLC*, 947 N.Y.S.2d 98, 99 (N.Y. App. Div. 2012) ("[A] party cannot claim that it was compelled to execute an agreement under duress while simultaneously accepting the benefits of the agreement."). Nor does Matek state how long it had to read the *seven-page-long* Supplier Relationship Agreement—the document in which the limitations language appears. And New York courts have held that a "[p]laintiffs' contention that they were unaware of [a] contractual limitations clause because of the length of the [contract] is insufficient to raise a factual issue as to the applicability of the contractual limitations period." *Beekman Regent Condo. Ass'n v. Greater New York Mut. Ins. Co.*, 845 N.Y.S.2d 38, 39 (N.Y. App. Div. 2007). Moreover, New York courts have held that two-year contractual limitations periods are reasonable. *See id.* at 39. Accordingly, the Court concludes that the parties validly shortened the statutory limitations period in favor of a contractual two-year limitations period. Because Matek brought its claim more than two years after the alleged breach, its claim is barred by the plain text of the Agreement.[5]

## V.  CONCLUSION

For the foregoing reasons, IBM's Motion to Dismiss (ECF No. 8) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 16, 2024                                          RUDOLPH CONTRERAS
                                                                                  United States District Judge

---

[5] IBM also argues that the language affording Matek "any and all remedies they may have available at Law and in equity" appears only in the "Dispute Resolution" provision of the Statement of Work, which applies only to disputes between Matek and Howard, not Matek and IBM. *See* Reply at 2, 6. It also argues that the Statement of Work "says nothing about timeliness." *Id.* While the Court agrees, it need not address these issues in further depth because, as explained in Part IV.A, *supra*, the contract is not ambiguous with respect to the termination clause.

11